UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

        v.                                     Case No. 1:21-cr-605 (RC)
                                           Case No. 1:21-cr-371 (RC)

ISAAC WESTBURY,
AARON JAMES,
ROBERT WESTBURY, and
JONAH WESTBURY,

        Defendants.

**NOTICE AND DISCLOSURE OF DEFENSE EXPERT STEVEN HILL PURSUANT TO F. R. CRIM. P. 16(b)(2)(G) AND F.R.E. 702, 703, AND 705**

NOW COMES Isaac Westbury, Aaron James, Robert Westbury, and Jonah Westbury ("Defendants"), by and through underwritten counsel, with this Notice and Disclosure of Steven Hill as the defense team's expert on the evaluation of certain videos and other exhibits, the uses of force shown and contained therein, and relevant police training manuals and training curricula. Mr. Hill is an expert in the fields of police use-of-force, self-defense, justified use of physical force, police hand-to-hand combat, police civil rights standards, and crowd control during mass demonstrations.

Mr. Hill has conducted police training instruction to officers and related agencies on a national and international level. Mr. Hill has extensive expertise and experience in the use of force by police. He has used every level of force, including deadly force. He has extensive expertise and experience in crowd control and was the leader of the tactical SWAT team for the City of Albuquerque for eight years. Mr. Hill has trained thousands of police officers, including officers from throughout the world, in places such as Ukraine, China, Mongolia, Vietnam, Sri Lanka, and Jordan.

Mr. Hill's expert opinions in the areas identified is not based upon the fact that he has written books about his area of expertise but they are based upon the fact that, not only has he worked for 40+ years in the field where he obtained my expertise, but the U.S. Government has paid him to design curriculum, build training programs, conducted training and assess the capabilities for thousands of police officers, first responders, safety and security personnel in order to teach, certify, and turn some of them into experts in the same field.

Mr. Hill worked in a government environment where all the training and assessment programs he designed, developed, documented is attributed to the team he worked with and the organization that paid for his services and that material is owned by the government.  Mr. Hill developed ideas related to security and police response that was turned over teams of scientists who worked with Mr. Hill in the development of two patent applications with his name (and others) identified along with working on numerous US Department of Energy Laboratory Directed Research and Development (LDRD) programs related to security response for high-risk government and public facilities.

Mr. Hill has been involved in providing advanced training and assessment of federal officers who were trained at various officer training facilities along with the Federal Law Enforcement Training Center (s) which are one of the locations that the US Capitol Police receive their basic training.  The basic training, they receive includes training in the use of force, use of deadly force, use of excessive force, use of force continuum, reactive control models (reasonable officers' perception and reasonable officers' response to the use of force), demonstrator/riot control, use of less lethal tools and equipment, and other areas of training and assessment.  Mr. Hill has taught these basic classes to officers around the world and his expertise

has led to his teaching advance level classes related to these classes but at a higher level of education to these officers.

     Based upon Mr. Hills real world experience, being involved in every level of the use of force an officer is authorized to use, investigation of officers use of force and excessive use of force, criminal and civil proceedings involving his and other police officer uses of force, his over 40 years expertise in working in this field as an officer and supervisor, along with the training and evaluation of police officers, he has had the opportunity to view over 1000 hours of US Capitol video, police officer body worn cameras (BWC), open source video, police officer "after action" reports, USCP and MPD operating procedures related to use of force, deadly force, less lethal force, use of force continuum, reactive control models, gives him the expertise to review officer actions on Jan 6th and provide expert conclusions.  As stated above, Mr. Hill has viewed close to 100 Metropolitan Police Departments and other police agencies body worn cameras relating to Jan 6th.

     Unlike most individuals who research a topic and write a book, Mr. Hill has been part of the entire spectrum that an officer who has used force will participate.  This not only includes the training in the use of force and the actual use of force, Mr. Hill has participated in the internal criminal investigations, administrative investigations, civil investigations along with the entire legal system from Grand Juries to criminal and civil trials related to uses of force (either for himself or for other officers).  This gives Mr. Hill the insight through experience, training, and investigation that very few experts in this career field will ever experience.  This gives him a unique perspective in all areas of the use of force.

     Finally, Mr. Hill has been certified in the use of all of the less lethal tools employed by the USCP with the exception of the FN303.  All of which he has used in less lethal roles while on

the APD. He was the SWAT team supervisor for his last 8 years on the APD and responded to hundreds of incidents that required the use of less lethal tools and equipment, most of which he supervised their employment with some circumstances where he was required to use these tools. While on the APD as an officer/detective, he responded to a number of large-scale public disturbances, some of which became violent, requiring riot control tactics to be used. While supervising the APD SWAT team, he was responsible for all tactical planning and responses to public demonstrations that had the potential for the destruction of property or violence to the public and officers. All of these violent public demonstrations had the potential of becoming riots, but the tactics proposed and employed deescalated most of these before they were declared riots.

Further, pursuant to Criminal Procedure Rule 16(b)(1)(C), Defendants inform the United States Attorney's Office and the Court that the defense hereby designates and seeks to elicit testimony from Mr. Hill as the defense team's expert, who stands ready to testify on his evaluation of in the fields of law enforcement use-of-force, police civil liability, and the movement and actions of the crowd at the U.S. Capitol on January 6. (See Steve Hill Curriculum Vitae attached hereto).

I.  **MR. HILL'S REVIEW OF EVIDENCE IN THIS CASE**

Specifically, Mr. Hill has reviewed several films of the defendants' alleged conduct in this case along with defense counsel. Additionally, Mr. Hill reviewed a larger number of films of events in the same areas leading up to the alleged assault incidents. Steven Hill offers the following summary observations and expert opinions:

1.  Capitol Police, D.C. Metro Police, and Prince Georges County Police are all trained and/or instructed to use physical force in accordance with a use-of-force continuum. Generally,

this use-of-force continuum dictates that officers must be responsive to levels of force used by combatants, rioters, or other non-officers.

2.  Although police training, instructions, and training manuals and testing may vary slightly from department to department, the basic rules and principles are prescribed by well-settled court decisions. For this reason, many police departments—including the police departments in this case—utilize the same or similar lessons, illustrations, and at times the same physical trainers.

3.  During riot or mass-number demonstrations, all officers are required to be respectful of First Amendment rights of protestors. Such rights generally include some allowance for civil disobedience and for protestors to closely approach the object of their protest.

4.  Officers are generally trained (in accordance with well-settled legal principles, developed through hundreds of court cases) to use physical force relating to levels of physical force exhibited or threatened by crowds whenever police need to clear physical spaces.

5.  Police are trained and instructed that in such circumstances they may contact and push at protestors in accordance with the recognized use-of-force continuum. Generally speaking, when officers make physical contact with demonstrators in such circumstances, the demonstrators on the receiving end of such contacts are not considered to be "assaulting" the officers.

6.  In accordance with use-of-force continuums, officers should never use greater levels of force than necessary. Thus, if an officer uses a baton head-strike, or a taser, or another weapon against the exposed head of a demonstrator in response to the demonstrator's mere passive resistance, such use of force by an officer is excessive force.

7.  These principles governing First Amendment protests in the District of Columbia and at federal institutions such as the White House and the Capitol are dictated and governed by civil

rights court decisions, and are well recognized by civil rights judges, lawyers, arbitrators, and law enforcement administrators.

8. Moreover, police uses of force in First Amendment protests within the District of Columbia are governed by such cases as Dellums v. Powell, 561 F.2d 242 (D.C. Cir. 1977) and Jeannette Rankin Brigade et al. v. Chief of the Capitol Police et al., 421 F.2d 1090 (D.C. Cir. 1969).

9. There are also U.S. Supreme Court decisions which govern police use of force, such as the Tennessee v. Garner decision, 471 U.S. 1 (1985). Garner and many other cases generally stand for the proposition that police may only use deadly or potentially-lethal force in defense of themselves or others from similar levels of force.

10. Baton strikes to unhelmeted heads of protestors by police are considered lethal force, and should only be utilized were lethal force is threatened or used by an assailant or combatant.

11. My review of the relevant videos of action on the lower west terrace of the Capitol around the tunnel entrance has revealed no instances of excessive force by the defendants Isaac Westbury or Aaron James. None of the defendants ever punched, kicked, or struck any member of law enforcement on January 6.

12. My review of these videos indicates that Isaac Westbury's actions—including his actions of holding and passing a wooden stick—were not intended so that other protestors could use the stick as a weapon against officers.

13. A plastic police-issue shield is generally a defensive device, and not a weapon. When used in a standard or conventional way, a plastic shield does not generally cause bodily injury even where the shield may contact another individual.

14.     Additionally, Isaac Westbury's and Aaron James' actions of grabbing the shield and using it in the tunnel to push ahead does not indicate that they used the shield for offensive purposes or to harm any officer.  They simply used the shield in order to protect themselves from the mayhem around them, namely to escape other protestors who were "assault[ing] the officers with objects and discharg[ing] pepper spray.  Doc 119 p. 3.

15.      In my experience and professional and expert opinion, Isaac Wesbury and Aaron James acted with justified use of force, in the chaos of the moment, under the circumstances, to *egress* from the situation.

16.     Police wearing riot protection, helmets and body armor have greater-than-normal protection from physical harm, and the purpose of such protection is to allow officers to make physical contact with members of the public without harm.

17.     No members of law enforcement suffered any bodily injuries caused by the defendants.

18.     I can be contacted at any time regarding my conclusions, of which I am prepared to testify.

## II. MR. HILL'S EXPERT CURRICULUM VITAE, PRIOR EXPERT TESTIMONY, AND QUALIFICATIONS

Lastly, relating to Rule 16(b)(1)(C) Defendant hereby discloses: (1) a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; (2) the basis and reasons for them; (3) the witness's qualifications, including a list of all publications authored in the previous 10 years; and (4) a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

1. **EXPERT OPINIONS THAT THE DEFENDANT INTENDS TO PROVE BY STEVEN HILL'S TESTIMONY**

Mr. Hill is expected to review video capturing Defendant's movements and the crowd on the lower west side of the Capitol on the afternoon of Jan. 6, 2021.  Mr. Hill is expected to examine the video footage surrounding this incident and provide testimony about law enforcement use-of-force tactics, police civil liability, if any, and the movements and actions of the crowd around Defendant during this timeframe.

Defendant expects that Mr. Hill will testify to the training and instruction given to law enforcement personnel on a national and local level, and how such could pertain to the U.S. Capitol on January 6, 2021.

2. **THE WITNESS'S QUALIFICATIONS, INCLUDING A LIST OF ALL PUBLICATIONS AUTHORED IN THE PREVIOUS 10 YEARS.**

Mr. Hill is a retired law enforcement official and is a Master level certified instructor through the Department of Energy/National Training Center.  Mr. Hill specializes in advanced tactical management, critical incident management, Special Weapons and Training (SPO-III), hazardous material tactical response, mobile field force, firearms instruction, criminal investigations, rappel master, first line supervision, electronic surveillance operations, and police civil liability.

Mr. Hill's areas of expertise are tactical operations, response force training, nuclear/radiological security of fixed and transportation assets.  He is an expert in the use of tabletop exercises for response training, data collection and physical security for fixed and mobile security high-risk assets.

Mr. Hill is a retired Systems Engineer with Transportation Systems Analysis at Sandia National Laboratories (SNL).  At SNL, he was an engineer with the Security Training and Risk Analysis Team (STRAT) where he built response related training programs and conducted security analysis in the areas of nuclear, radiological, chemical and biological security and

response.  Mr. Hill also participated in the theory and development of future lethal and less lethal weapon systems as part of lab directed research and development teams, resulting in being named in two patent applications for an electronic control device (Taser technology) and disintegrating ballistic materials).

Mr. Hill is also retired from the Albuquerque Police Department, where he led and supervised hundreds of high-risk tactical events including hostage resolutions, high risk search warrants, armed/violent offenders, demonstrators, and riot control.  He served as the supervisor of the SWAT Team for over 8 years and was a detective in the Special Investigative Department/Repeat Offender Project. Steve has more than 30 years of experience in training state, local and federal standards-enforcement personnel in lethal and less lethal use-of-force and had worked part time for the DOE National Training Center and the U.S. Department of State.

3. **A LIST OF ALL OTHER CASES IN WHICH, DURING THE PREVIOUS 4 YEARS, THE WITNESS HAS TESTIFIED AS AN EXPERT AT TRIAL OR BY DEPOSITION.**

Mr. Hill has not testified as an expert witness in the last 4 years.  But for the past 18 years prior to his retirement from the APD, he was an expert in training police, military and first responders from around the world.  Hill also was an expert in the evaluation of police and military force multipliers and response force tools and equipment.

Lastly, Mr. Hill has been retired for only 24 months, and now seeks to start testifying in police training and use-of-force procedure because while employed he was not in a position to do so freely, or frequently.

Dated: January 21, 2024                                             Respectfully Submitted,
                                                                    /s/ *John M. Pierce*
                                                                    John M. Pierce
                                                                    21550 Oxnard Street

                                                    3rd Floor, PMB #172
                                                    Woodland Hills, CA 91367
                                                    Tel: (213) 400-0725
                                                    jpierce@johnpiercelaw.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I, John M. Pierce, hereby certify that on this day, January 22, 2024, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

                                                    /s/ John M. Pierce
                                                    John M. Pierce